IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAREK DEAN EVANS, § <br> *Plaintiff,* § <br> § <br> V. § <br> § <br> NEWFIELD EXPLORATION COMPANY, ET AL., § <br> *Defendants.* § | CIVIL ACTION NO. 4:19-cv-2552 |

## MEMORANDUM AND RECOMMENDATION

This ERISA case involving severance benefits is before the Court on Defendants' Motion for Summary Judgment (ECF 78), to which Plaintiff has filed a Response (ECF 83) and Defendants have filed a Reply (ECF 84).[1] Having considered the parties' submissions, oral arguments at a May 14, 2021 hearing, and the law, the Court recommends that Defendants' Motion for Summary Judgment be GRANTED.

**I.    Factual and Procedural Background**

Plaintiff Evans began working for Newfield in 2007. From 2011-2013 he held the title of Senior IT Project Manager in Newfield's IT Department. In 2014 he was promoted to Senior Business Performance Specialist in the Business Performance Management Department and in 2018 his title changed to Business Performance Management Professional (BPMP). ECF 83-3 at 5-8 (Evans Depo.).[2] Plaintiff testified that as a BPMP his job was to manage, organize, and facilitate cross-functional projects—projects that touched multiple functions such as drilling engineers, field superintendents, or the Regulatory Department. *Id.* at 39-41. According to Plaintiff, the projects he worked on sometimes did not have an IT or systems component. *Id.* at 17, 29, 41.

---

[1] The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 57.

[2] As explained in Section II below, a court's review of the merits of a claim for benefits is generally limited to the administrative record. However, in this case both sides have submitted summary judgment evidence outside the administrative record without objection.

Plaintiff was a participant in the Fifth Amended and Restated Newfield Exploration Company Change of Control Severance Plan (the Plan). ECF 77-1 (NE 680-729). The Plan includes a provision for severance benefits for Covered Employees in the event of an Involuntary Termination following a "Change in Control." *Id.* A Change of Control under the Plan occurred on or about February 3, 2019 when Encana acquired Newfield with Encana remaining as the surviving company. There is no dispute that Plaintiff was a "Covered Employee" under the Plan. The Plan contains the following provisions relevant to determining whether a Covered Employee is entitled to severance benefits due to Involuntary Termination:

> (i) **"Good Reason"** shall mean, with respect to each Covered Employee, on or following a Change of Control but not later than the second anniversary of the Change of Control, the occurrence of any one of the following:
>
>> (1) a material reduction in the nature or scope of such Covered Employee's aggregate responsibilities from those applicable to such Covered Employee's immediately prior to the date on which a Change of Control occurs: . . .
>
> (j) **"Involuntary Termination"** shall mean, with respect to each Covered Employee, any termination of such Covered Employee's employment with the Employer that occurs on or following a Change of Control but not later than the latest to occur of (1) the second anniversary of the Change of Control and (2) the expiration of the 30-day period described in clause (B) of this Section 2.1(j), and which:
>
>> (A) does not result from a voluntary resignation by such Covered Employee (other than resignation pursuant to clause (B) of this Section 21(j)); or
>
>> (B) results from a resignation by such Covered Employee *on or before* the date which is *30 days after* the date the Covered Employee receives notice of a Good Reason event; . . .

ECF 77-1 at 20-21 (NE 682-83).

On February 18, 2019, Plaintiff received a letter from Kristi Switzer of Encana informing him of his new position as "Sr. IT Project Manager, reporting to me." ECF 77-1 at 118-19 (NE 780-81). The letter offered "a competitive total compensation package," but did not discuss the nature or scope of the "aggregate responsibilities" of the new position. *Id.* Shortly thereafter, Plaintiff spoke on the phone with Encana's IT Director, John De Graaf, and expressed concerns

about the new position because his current job was independent of the IT Department. ECF 83-3 at 14-15. On February 25, 2019, Switzer and De Graaf met with Evans and, according to Evans, De Graaf told him Encana leadership was still trying to determine "where in the organization BPM would best be placed" and Switzer most likely would not be his supervisor. *Id.* at 20-22. Plaintiff testified that he attended a presentation on March 6, 2019 by Josh Pinkert of Encana at which Pinkert showed a list of Encana IT team projects for 2019 all of which focused exclusively on IT systems. *Id.* at 30-31. On March 11, 2019, 21 days after receipt of the February 18, 2019 placement letter, Plaintiff sent an email to Encana's Director of Compensation & Benefits, Elizabeth Whillock, stating that his placement as a Sr. IT Project Manager represents a "material reduction in the nature or scope of . . . aggregate responsibilities" and therefore he was resigning effective immediately. ECF 77-1 at 106 (NE 768). Plaintiff believed his resignation under these circumstances entitled him to severance benefits under the Change of Control Severance Plan.

On March 20, 2019, Whillock referred Plaintiff's claim to the Change of Control Severance Plan Committee, stating "[a]s the Plan's Benefits Administrator, I have evaluated available information regarding [Plaintiff's contention of a Good Reason event] and have concluded that [his] right to a severance benefit under the Plan is not clear." ECF 77-1 at 105 (NE 767). At a meeting on March 21, 2019 the Committee unanimously denied Plaintiff's claim for severance benefits. ECF 77-1 at 109 (NE 771). In making this decision, the Committee considered information provided by former Newfield employees and current Encana employees familiar with the role of Senior IT Project Manager. *Id.* Specifically, member Nichols informed the Committee in its initial March 2019 review that at Newfield, "she would identify a project to the BPM team, and the BPM leader would assign [Evans] or one of the other team members to serve as the project manager for that project." ECF 77-1 at 109 (NE 771). Nichols confirmed that "Mr. Evans did not initiate the projects and she primarily interfaced with [Evans's] leaders when initiating the project." *Id*. In addition, member Liedtke informed the Committee that while

3

Plaintiff's new position was structurally located within the IT team, he "would have responsibilities for managing all facets of business-initiated projects with sponsors from the business, not just technology-driven programs." *Id.* Liedtke also confirmed that the project management role "included leading cross-functional teams across the entire organization." *Id.*

Evans sought review of the Committee's initial decision. ECF 77-1 at 225-27 (NE 887-889). The Committee reviewed Evans's claim at its May 21, 2019 meeting. ECF 77-1 at 217-18 (NE 879-880). On review the Committee considered a May 13, 2019 Memo from Encana "IT Leadership" stating that the project management role at Encana typically is handled by the IT team and "[t]he solutions delivered can span the entire organization or numerous divisions and require a comprehensive solution mind-set, not just focusing on the delivery of a technical solution." *Id.* at 215 (NE 877). The Memo further states that IT leadership reviewed the list of projects currently being overseen by the Newfield BMP Department and found "that the legacy Newfield project portfolio was very similar to many of the solutions projects at Encana." *Id.* The Memo explained "Mr. Evans was involved in several early discussions about his new role: the day he received his offer, a phone discussion a week later and personal visit with 2 leaders the following week. In each interaction, he challenged the opportunity he'd been given rather than seeking to understand the Encana model and what it really entailed." *Id.* The Committee meeting minutes show that the Committee considered the fact that Evans submitted his resignation 2 ½ weeks after the closing of the merger instead of using the full 30 days allotted to learn about his new position. ECF 77-1 at 217 (NE 879). The Committee also considered a document titled "Role Description: Encana IT Project Manager" that was used as the job posting to "backfill" Plaintiff's position. ECF 77-1 at 116-17 (NE 778-79). This document sets forth specific duties and skills required in the position. *Id.* Plaintiff was not provided this document prior to his resignation. ECF 83-1 at 3 (Evans Declaration).

On June 3, 2019, Whillock informed Plaintiff of the Committee's final decision—that Plaintiff's "job following the Change of Control did not represent a material reduction in the nature or scope of the aggregate job responsibilities of the job he had immediately prior to the Change of Control as required by Section 2.1(i)(1)" of the Plan. *Id.* at 308 (NE 970). To reach its final decision, "the Committee reviewed and considered all documents [counsel] provided on Mr. Evans's behalf, documents and information provided by Mr. Evans in connection with the initial claim, documents and information provided by Encana both on the request for review and at the initial claim determination stage, and information available to Committee members based on their experience as Newfield employees prior to the Change of Control." *Id.* at 308-09 (NE 970-71).

Plaintiff filed this case on July 15, 2019 asserting a cause of action against Defendants pursuant to 29 U.S.C. § 1132(a)(1)(B) for wrongful denial of benefits. Plaintiff contends he is entitled to severance benefits because he resigned for "Good Reason" after a Change of Control in early 2019. Plaintiff also contends that Defendants denied him a full and fair review and the review process was procedurally unreasonable. Defendants now move for Summary Judgment affirming the denial of benefits.[3]  ECF 78.

## II.   ERISA Standard of Review

### A.   Abuse of Discretion

In *Ariana M. v. Humana Health Plan of Tex., Inc.*, the Fifth Circuit reiterated Supreme Court precedent setting forth the standard of review for a challenge to an ERISA benefits decision:

> When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion. For plans that do not have valid delegation clauses, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard."

---

[3] The Court granted Plaintiff's Motion to Supplement the Administrative Record. ECF 75. Defendants filed the supplemented Administrative Record, under seal in part, on January 8, 2021. ECF 76, 77.

*Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The primary holding of *Ariana M.* is that the applicable standard of review established in *Firestone Tire & Rubber Co. v. Bruch*—whether de novo or abuse of discretion—applies both to factual determinations and matters of plan interpretation.  884 F.3d at 256.  In this case, the Plan calls for appointment of a Committee as the Plan Administrator and confers discretionary authority on the Committee to: make rules and regulations to administer the Plan; interpret the Plan; decide eligibility under the Plan; and make a determination of the right to benefits.  ECF 77-1 at 25-26 (NE 687-88).  Therefore, the Court reviews the Committee's decision to deny Plaintiff severance benefits for abuse of discretion.[4]

Some cases in this circuit apply a multi-step test for abuse of discretion, asking first if the decision was legally correct and only in the event the answer is no, proceeding to determine whether the decision was an abuse of discretion.  *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp.*, L.L.C., 878 F.3d 478, 483 (5th Cir. 2017).  However, the Fifth Circuit has made clear that district courts are free to proceed straight to an abuse of discretion analysis if it "can more readily determine that the decision was not an abuse of discretion."  *Id.* at 484.  As a result, many Fifth Circuit cases follow this approach.  *See, e.g., Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009).

The abuse of discretion analysis is synonymous with arbitrary and capricious review.  *Id.*; *Connecticut Gen. Life Ins. Co.*, 878 F.3d at 483.  "Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'"  *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019) (citations

---

[4] In its Order granting the motion to supplement the record, the Court ordered the parties "to address in their summary judgment briefing the impact of *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) and the prohibition of discretionary clauses under TEX. INS. CODE § 1701.062(a) and TEX. ADMIN. CODE § 3.1203 on the standard of review in this case."  ECF 75 at 8.  Defendant's briefing and authority cited therein establishes that the issue of preemption of the Texas non-delegation statute is not applicable to this self-funded ERISA plan.  ECF 78 at 19-21.  Plaintiff's counsel confirmed on the record at the hearing that abuse of discretion is the applicable standard of review.

omitted). Substantial evidence is more than a scintilla and less than a preponderance. *Id.* A decision is arbitrary "only if made without a rational connection between known facts and the decision or between found facts and the evidence." *Id.* Under the abuse of discretion standard, the Court must uphold the plan administrator's decision if it "fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir.), *cert. denied*, 141 S. Ct. 965, 208 L. Ed. 2d 500 (2020).

    **B.**    **Scope of Record on Review**

A Court's review of an ERISA benefits determination is limited, with narrow exceptions, to the administrative record. *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) ("Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions"); *Hargrave v. Commonwealth Gen. Corp.'s Long Term Disability Plan*, 430 F. App'x 256, 259 (5th Cir. 2011) (same). The Fifth Circuit has recognized that a Court may review: "(1) evidence related to how an administrator has interpreted terms of the plan in the past; (2) evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a benefits claim; (3) evidence regarding the completeness of the administrative record; (4) evidence regarding whether the plan administrator complied with ERISA's procedural regulations; and (5) evidence regarding the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan." *See Soileau & Assocs., LLC v. Louisiana Health Serv. & Indem. Co.*, No. CV 18-710-WBV-JCW, 2020 WL 1969984, at *4 (E.D. La. Apr. 23, 2020) (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258 (5th Cir. 2011) and *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287 (1999)).

To the extent Plaintiff has submitted evidence outside of the administrative record to attempt to demonstrate a conflict of interest or violations of ERISA procedural regulations, the evidence is admissible. However, specific evidentiary rulings by the Court are unnecessary

because both sides have submitted evidence outside of the administrative record and neither side has objected. *See* ECF 78 (Ex. A, B, C); ECF 83 (Ex. A, B, C). Therefore, the Court has considered the entire summary judgment record in making its recommendation.

### III. Summary Judgment Standards

Defendants' motion for summary judgment in this ERISA case is governed by standard summary judgment rules. *Lebron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, No. 20-20165, 2021 WL 1396574, at *2 (5th Cir. Apr. 13, 2021) ("Standard summary judgment rules control in ERISA cases. *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017") (citations omitted)).

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and must present evidence such as affidavits, depositions, answers to interrogatories, and admissions on file to show "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013). In ruling on a motion for summary judgment the Court does not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the

evidence." *Honore v. Douglas,* 833 F.2d 565, 567 (5th Cir. 1987). However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex*, 477 U.S. at 325).

**IV.     Analysis**

Plaintiff contends that the Committee denied him a full and fair review of his claim in violation of 29 U.S.C. § 1133 by not providing him (1) the written job description used to "backfill" the position at issue; (2) names of the Committee members; (3) unredacted minutes of the discussion regarding the Plan interpretation and "Interpretation worksheet" at the March 7, 2019 Committee meeting; and (4) the memo from Encana IT Leadership. Plaintiff also alleges he was denied full and fair review because the Committee ignored his complaint that he was not given sufficient information about his new position. Plaintiff further contends the Committee abused its discretion because its decision was the result of a conflict of interest and procedural unreasonableness.

**A.     The Committee did not abuse its discretion.**

**1.     The Committee's decision is supported by substantial evidence and is not arbitrary.**

The issue for the Court is not whether Evans's *claim* is supported by substantial evidence, but whether the Committee's *decision* is supported by substantial evidence. *See Cooper v. Hewlett-Packard Co*., 592 F.3d 645, 656 (5th Cir. 2009) ("Support for the plaintiff's claim is not controlling because we must defer to the administrator's decision if the plan administrator's denial is supported by substantial evidence."). Substantial evidence in the administrative record supports the Committee's finding that Evans's new position did not involve a "material reduction in aggregate responsibilities" and therefore Plaintiff cannot show the Committee's denial of his

9

claim for severance benefits was an abuse of discretion. This evidence includes the Committee's discussions, summarized in the May 21, 2019 meeting minutes:

> The Committee discussed that although Mr. Evans's job title changed, and the organizational unit in which his job resided changed from a standalone team (BPM) to a segment of the IT team, the nature and scope of his aggregate job responsibilities did not change. As Mr. Evans's counsel described, as a Newfield BPM Principal, Mr. Evans "focused on business challenges, regardless of the presence of an IT component, and included direct responsibility for monitoring the Business Performance Management portfolio status, leading, overseeing, and assembling teams to execute cross-functional change initiatives, supervising cross-functional programs and projects, training team members, spanning people, processes, and systems, tailoring IT software to the business where needed, developing best practices for project organization, designing measures for evaluating project execution (among other components critical to project success), and providing guidance on the best outcomes for the organization as a whole." As an Encana Sr IT Project Manager, Mr. Evans would have responsibilities for managing all facets of business initiated projects with sponsors from the business, not just technology-driven programs, including leading cross-functional teams across the entire organization in which solutions delivered could span the entire organization or numerous divisions and require a comprehensive solution mind-set, not just focusing on the delivery of a technical solution, strong leadership, facilitation and communication skills, in addition to core project management skills. Accordingly, comparing the aggregate job responsibilities of the Sr IT Project Manager to the aggregate job responsibilities of the BPM Principle, the Committee discussed that the duties were comparable and therefore there was no reduction to the nature or scope of the aggregate job responsibilities.

ECF 77-1 at 217-18 (NE 879-80). As explained in the June 3, 2019 final determination letter (ECF 77-1 at 308-09 (NE 970-71)), the Committee's decision is supported by the written job description provided by Encana (ECF 77-1 at 116-17 (NE 777-78)), the May 13, 2019 Encana IT Leadership memo, (ECF 77-1 at 215 (NE 877)), and the personal knowledge of Committee members. This amounts to more than a scintilla of evidence and under applicable ERISA standards constitutes "substantial evidence." *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019). The Committee's decision is rationally related to the substantial evidence and thus is not arbitrary and capricious. *Id*.

### 2. The Committee's decision does not result from a conflict of interest.

A conflict of interest is one factor a Court may consider when weighing whether a benefits

decision is an abuse of discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 813 (5th Cir. 2019); *White v. Life Ins. Co. of N.Am.*, 892 F.3d 762, 767 (5th Cir. 2018). The weight of the conflict will vary depending on the circumstances of the case. *Id.* Procedural unreasonableness is not an independent basis for finding an abuse of discretion but is a factor that may give weight to the existence of a conflict. *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 510 (5th Cir. 2013). A structural conflict of interest exists when the employer who funds the plan also determines eligibility for benefits. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 248 (5th Cir. 2009). However, a structural conflict may be outweighed if substantial evidence supports the denial of benefits or the claimant has no evidence that the conflict influenced the benefits decision. *Nichols*, 924 F.3d at 813.

The Committee in this case consisted of five former Newfield employees, only one of which, Brandi Laird, continued with Encana after the change of control. ECF 83-5 at 15. The Committee's minutes reflect that Laird did not speak at the review meeting and the Committee's decision on Plaintiff's claim was unanimous. ECF 77-1 at 218. Elizabeth Whillock, the Benefits Administrator, also worked for Encana. Whillock was not a member of the Committee. There is no evidence that Laird or Whillock received any compensation for their roles in connection with the severance Plan.[5] At most, these facts indicate a structural conflict of interest that on its own fails to demonstrate an abuse of discretion. Plaintiff argues that Whillock's conflict of interest, combined with the procedural unreasonableness of the review process, supports a finding of abuse of discretion.

Whillock's role was to gather information and present it to the Plan for its consideration. *See, e.g.*, ECF 77-1 at 105 (NE 767) (Whillock's March 20, 2019 memo to the Committee stating "I have evaluated available information regarding [Plaintiff's] contention and have concluded that

---

[5] Defense counsel stated on the record at the hearing that Laird and Whillock did not receive compensation for their roles.

11

[his] right to severance benefit under the Plan is not clear. I am referring the matter to the Committee for a determination."). Plaintiff argues that an email Whillock sent to the Encana IT Leadership team in connection with her May 8, 2019 request for assistance with Encana's response to Plaintiff's appeal evidences that Whillock's conflict influenced the Committee's benefits decision. ECF 77-2 at 2-3. Kristi Switzer responded to Whillock's request by stating that her memory of certain events differed from the description in Plaintiff's counsel's letter requesting review. Whillock responded "Don't worry too much about his description of events. This is pretty typical with these, but we only need to address his role-not necessarily confirm the details of each interaction." ECF 77-2 at 2. Whillock's instruction to Switzer to focus on Plaintiff's new role at Encana and not respond to each argument made by counsel does not indicate an attempt to influence the Committee's benefits decision. Whillock instructed Switzer to focus on the appropriate task—identifying the responsibilities of the Encana role Plaintiff was assigned. Plaintiff also points to minutes of the May 21, 2019 Committee meeting in which "Ms. Whillock explained that Mr. Evans likely misinterpreted Ms. Switzer's comments and that Ms. Switzer was simply suggesting a different reporting structure based on project portfolio by having Mr. Evans report to her supervisor instead." ECF 77-1 at 218. This statement by Whillock is not significant given that the Committee's determination that whether Plaintiff would report to Switzer or her supervisor was not relevant to the "determination of whether there was a material reduction in the nature or scope of Mr. Evan's job's aggregate responsibilities." *Id.*

Plaintiff bases his argument that the unreasonableness of the procedure supports an abuse of discretion finding on Whillock's failure to provide him with: (1) a copy of the written job description (ECF 77-1 at 116); (2) the names of Committee members; (3) Committee minutes showing how the Committee interpreted the "good reason" provision of the Plan (ECF 77-1 at 216; ECF 77-1 at 86 (NE 748-49)); and (4) the IT Leadership memo (ECF 77-1 at 215). He further argues that the Committee wrongly ignored his claim that he was not given sufficient information

to enable him to make an informed decision about resigning. *See* ECF 77-1 at 217 (Committee minutes noting "The Committee discussed that while Mr. Evans claims that he wasn't provided enough information on his Encana position, that isn't a factor into whether or not a good reason event occurred."). Defendant does not dispute Plaintiff's representation that it failed to provide the listed information. However, Plaintiff has not articulated, either in his briefing or in oral argument, how the failure to provide the information prejudiced his claim. He has not identified any evidence he was prevented from presenting to the Committee. He claims the lack of information prevented him from fully responding to the evidence before the Committee, but cannot identify any argument or evidence he would have presented to rebut the written job description, the Committee's Plain interpretation, or the IT Leadership memo. He had a copy of the Plan and he was the person in the best position to describe his current job to the Committee. He concedes it was his burden to fully investigate and determine whether there was good reason to resign, but admits that he never asked for a written job description (ECF 83-3 at 34), and did not ask Switzer and De Graaf "the point blank question: Do your IT project managers do this?" ECF 78-2 at 17. The record also demonstrates that he resigned nine days before the deadline set forth in the Plan, despite claiming he did not have enough information at that time to make an informed decision.

Plaintiff has not identified any material factual disputes. In essence, he simply objects to the Committee's decision and feels it did not give due consideration to his arguments. The Court concludes that any conflict or procedural failures during the review process are clearly outweighed by the substantial evidence supporting the Committee's decision and by the lack of evidence that Whillock's alleged conflict impacted the benefits decision. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 813 (5th Cir. 2019).

**B.     Plaintiff was not denied a full and fair review of his claim.**

Plaintiff argues the Plan administrator's conduct was procedurally unreasonable and denied him a full and fair review in violation of ERISA and its implementing regulations. Every ERISA

employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

*Id.*; 29 U.S.C.A. § 1133. In addition, ERISA regulations require an employee benefit plan to establish reasonable claim procedures. 29 C.F.R. § 2560.503-1(b); *Rossi v. Precision Drilling Oilfield Servs. Corp. v. Employee Benefits Plan*, 704 F.3d 362, 366 (5th Cir. 2013). The Fifth Circuit has held that § 1133 and the corresponding regulations require the Plan to "(1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." *Rossi*, 704 F.3d at 366. Among the regulations meant to ensure a full and fair review is the requirement that the Plan provide a claimant, upon request, with documents relevant to her claim for benefits. 29 C.F.R. § 2560.503-1(h).

The Plan is held to a standard of "substantial compliance" with the claim procedure regulations. *Shedrick v. Marriott Int'l, Inc.*, 500 F. App'x 331, 338 (5th Cir. 2012) (explaining that technical noncompliance with ERISA procedures is excused if the purpose of § 1133, affording the beneficiary a meaningful review of the benefit denial, has been fulfilled); *Cooper*, 592 F.3d at 645-55 (the purpose of section 1133 is to afford the beneficiary an explanation of the denial that is adequate to ensure meaningful review). The Fifth Circuit defines "substantial compliance" as requiring a "meaningful dialogue between the beneficiary and administrator." *Shedrick*, 500 F. App'x at 339. The proper remedy for failure to provide a full and fair review is remand to the Plan Administrator for full and fair review. *Rossi*, 704 F.3d at 368; *Romo v. Waste Connections US, Inc.*, 832 F. App'x 861, 865 (5th Cir. 2020).

Plaintiff does not cite any authority demonstrating that actions similar to those in this case

14

constitute a denial of full and fair review as required by § 1133 and § 2560.503-1. In *White*, the defendant obtained an expert toxicology report to determine whether decedent's death was caused by intoxication or drug abuse and that report undermined the defendant's decision to deny benefits. Despite the report, defendant upheld its decision on review. The court held that the defendant denied the claimant full and fair review by failing to provide claimant with a copy of the report. *White*, 892 F.3d at 769. In *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393 (5th Cir. 2006), Aetna changed its reason for denying benefits upon review and failed to provide the claimant with the vocational expert report upon which it relied for its final decision. The Court found Aetna's shifting justification of its decision and the withholding of information denied the claimant meaningful review. *Id.* at 394. *Rossi*, 704 F.3d at 367, involved a similar bait and switch in which the Plan relied on an entirely different ground for denial of benefits at the administrative appeal. *See also Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 155-56 (5th Cir. 2009) (Plan initially denied coverage for one reason and switched its reasoning on appeal). None of these cases involved situations similar to Plaintiff's.

The summary judgment record reveals a meaningful dialogue between Plaintiff and the Committee on appeal. Whillock informed Plaintiff by email on March 25, 2021 that the Committee denied his claim for severance benefits because "the changes to your job did not represent a material reduction in the nature or scope of the aggregate job responsibilities of the job you had immediately prior to the Change of Control." ECF 77-1 at 122-24. Plaintiff's counsel provided a clear, detailed explanation of Plaintiff's position in his April 17, 2019 request for review letter. ECF 77-1 at 225-227. On review, the Committee denied benefits for the same reason explained in the initial denial letter. ECF 77-1 at 308-09. The record does not support Plaintiff's claim that the Committee ignored his assertion that Encana failed to provide him enough information. The record demonstrates that the Committee discussed his claim that he lacked information and determined it was not relevant to the "good reason" analysis. ECF 77-1 at 217.

The Fifth Circuit has noted that "there does not appear to be relevant case law or regulations for the proposition" that a plan administrator has to allow a claimant an opportunity to rebut information submitted during its review. *Shedrick*, 500 F. App'x at 339. Importantly, Plaintiff cannot identify any argument or evidence he would have presented to the Committee had he been provided more information. The Court concludes that Defendant afforded Plaintiff a full and fair review of his benefits claim.

## V. Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's claims be dismissed with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on June 11, 2021, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge